### ROBERT MYERS *v.* THE BAPTIST SOCIETY IN JAMAICA.

*Book Account.      Contract.      Quantum Meruit.      Damages.*

The defendant, a religious society, engaged the plaintiff to become their pastor for one year for $300. About the commencement of the second year, the defendant told him that the amount subscribed was less than that of the first year, and he agreed to remain for such sum as could be raised by subscription, the defendant to collect the subscriptions. The defendant having failed to collect and pay over the subscriptions in full, the plaintiff commenced an action on book account to recover for his services as pastor, he having continued as such for the defendant for five years under the same agreement. *Held,* that the contract through the whole time was a contract of hire, under which the defendant was bound to pay the plaintiff for his services,

Myers *v.* Baptist Society.

*Held,* also, that the defendant was bound to use due diligence in obtaining subscriptions and in collecting them, and the plaintiff was entitled to recover such an amount as might have been so collected, deducting therefrom the payments made to the plaintiff; but was not entitled to recover upon a *quantum meruit.*

Property sold or services rendered may be charged on book where no price is stipulated.

Where a party sues to recover the stipulated price for services actually rendered under a special contract fully performed on his part, it is no objection to the action on book that the services were performed under a special contract still unrescinded. If the action is for damages for being prevented by the defendant from performing the services, it is otherwise.

If, by the fault or neglect of the defendant, it is rendered impossible to estimate the compensation by the stipulations of the contract, the plaintiff may recover upon a *quantum meruit.* But the mere fact that such breach of the contract, or the fault or neglect of the defendant, embarrasses the plaintiff to some extent in his proof, will not necessarily give the plaintiff the right to abandon the contract and recover independent of it.

BOOK ACCOUNT, to recover for services as pastor of the defendant society. The facts found by the auditor are set forth in the opinion of the court. At the September Term, 1865, DEAN, J., presiding, the court rendered judgment on the auditor's report, *pro forma,* for the plaintiff, for the sum of $750, to which the defendant excepted.

*A. Stoddard* for the defendant.

*Butler & Wheeler* for the plaintiff.

The opinion of the court was delivered by

PECK, J. This is an action on book to recover the balance claimed to be due to the plaintiff for his services as pastor of the defendant society from April, 1857, to April, 1863. It appears that the society engaged the plaintiff to become their pastor and agreed to pay him $300. salary for the first year and give him the use of the parsonage, to which he assented and performed the services, and, as the auditor finds, continued the same relation with the society for six years. It appears that while negotiating with the defendant, the society delayed closing the contract to see what subscriptions they could raise, and finally, having raised a subscription to nearly that amount, entered into the engagement as already stated. The auditor finds a balance due to the plaintiff for the first year's service of $53.02, as to which no question is made. The questions arise upon the claim for services for the next succeeding five years, during which time the plaintiff remained and performed similar services. The report shows that

in the spring of 1858, about the commencement of the second year, the defendant informed the plaintiff that the subscription papers had been circulated and that the amount subscribed was less than the first year, but that they could promise him no more than what could be raised by subscription, and the plaintiff agreed to remain for such sum as could be thus raised, the defendant promising to make still further efforts to increase the amount of the subscriptions. It appears that similar talk was had other years, though nothing was said the fourth and fifth years, but that such was the understanding for all of the last five years. The auditor finds that the committee of the society kept all the subscription papers, and subscribers paid some times to the committee, who paid it over to the plaintiff, and some times the subscribers paid directly to the plaintiff, and that the plaintiff kept an account of what he received, and of whom, and when received, and that he had no means of knowing how much any one had subscribed only from the statements of those who paid. The auditor says the defendant claimed before him that the contract was that the plaintiff was to receive whatever should be realized from the subscriptions, and that he had received from the subscribers and through the committee all that had been realized, and that the society therefore owes the plaintiff nothing, and that he finds the contract thus for the last five years, with the additional stipulation that the defendant was to collect the subscriptions, and that he is of opinion that, as matter of law, the defendant was bound to use due diligence in so doing, and finds, as matter of fact, that the defendant did not use due diligence in collecting the subscriptions, although they did in obtaining subscriptions to be made. It is further found that it was not expected by either party that the plaintiff should collect the subscriptions, and that all agreed that he could do no more than to receive what any one voluntarily offered to him. There are numerous other facts stated in the report, but these are sufficient to show the relation of the parties in reference to determining the contract between them and the right and duties of the parties under it.

The first question is, what was the character of the contract between the parties; was it such as to create the relation of employer and employee between the plaintiff and the defendant in such a sense as to entitle the plaintiff to look to the defendant for compensation

for his services. We think it was. The plaintiff was, in fact, employed by the society, and no one else, to perform the services for wages. It was a contract of hire, and the performance of the labor by the plaintiff created the relation of debtor and creditor between him and the society. The plaintiff was not in the employ of the subscribers upon the subscription papers, he was not employed by them, and had no contract with them for his services, and clearly could not maintain an action against them for work and labor. It does not appear to whom the subscriptions were in terms made payable, but it is to be presumed they were payable to the society. But whether so or not is immaterial, as the uncollected subscriptions did not, by the contract, become the property of the plaintiff in satisfaction of his services, or in any manner whatever; he, by the contract with the defendant, had no legal control over them. The plaintiff's services, therefore, were performed on the credit of the society under the contract between it and the plaintiff. This is evident from the whole finding of the auditor. The first year there was an express contract of hire for a salary of $300. The statement of the auditor that about the commencement of the second year the defendant told him that the amount subscribed was less than that of the first year, but that they could promise him no more than what could be raised by subscription, and the plaintiff agreed to remain for such sum as could be thus raised, the defendant promising to make still further efforts to increase the amount of subscriptions, with the fact that the defendant was to collect the subscriptions, shows that the parties did not intend to vary the character of the contract in this respect from that of the first year, but only in the amount of compensation, and perhaps incidentally by implication, in the time of the several payments. The contract through the whole period of the five years was a contract of hire by which the defendant was to pay the plaintiff for his services.

The next question is, what amount the society agreed to pay. In terms the contract was, to pay the amount the defendant could procure and realize out of subscriptions; the defendant to obtain and collect the subscriptions; and the auditor is right in deciding as matter of law that the society was bound to use due diligence in doing so. The contract, therefore, in effect, was to pay the plaintiff the

39

amount the society could, with reasonable effort and due diligence, obtain by subscription and collect. This was the measure of the amount of the plaintiff's compensation under the contract. The report finds that the plaintiff has received all that was realized upon the subscriptions, and that the defendant used all reasonable effort and due diligence in obtaining subscriptions to be made, but that there were many delinquent subscribers, that the society paid but little attention to collecting the subscriptions, and that in this respect the defendant was wanting in due diligence, in consequence of which a less sum was realized upon the subscriptions obtained than might have been collected by due diligence. The auditor finds the amount that might have been collected with due diligence on the subscriptions obtained, and allows the plaintiff that sum, deducting therefrom the payments made to the plaintiff.

It is objected that the plaintiff cannot recover this balance because there is no fixed rule by which the amount can be ascertained. But there is no such uncertainty in the contract in this respect as to render this objection available. The contract furnishes a clear and definite standard by which to measure the amount of the plaintiff's compensation. If the society had used due diligence in collecting the subscriptions, and kept an account of what was collected as the plaintiff did of what he received, the amount of the plaintiff's claim would have been certain, as much so as if he had labored at a fixed salary. Whatever uncertainty there now is, does not grow out of any uncertainty in the stipulations of the contract, but is attributable to the defendant's neglect to perform their part of the contract in the matter of the collecting. The right of the plaintiff cannot be defeated by the neglect of the defendant to perform their part of the contract. If, in consequence of such neglect on the part of the defendant, no guide is left by which to fix the amount, then the plaintiff is entitled to recover on a *quantum meruit*, which, according to the finding of the auditor, would more than treble the amount of the plaintiff's recovery. But that is certain which can be rendered certain. It can be ascertained with reasonable certainty what might have been collected with due diligence. Such questions often arise in court. It would depend mainly on the solvency of the subscribers.

If any subscriptions were lost by death or removal it could be shown. But it is said the action on book will not lie. It is insisted that the plaintiff had no right to charge on book at the time he rendered the services, because the amount could not then be known. But the fact that the amount was not then ascertained is no objection. Property sold or services rendered may be charged on book when no price is stipulated.

It is also urged that as to the amount uncollected which might have been collected, it is in the nature of damages for a breach of a special contract, and therefore the action on book is not the proper action. But this is not the ground of the recovery. The plaintiff's claim is for compensation for services actually rendered according to the terms of the contract. What might have been collected is only resorted to to ascertain the amount the defendant agreed to pay. If the plaintiff had been the owner of the subscriptions, and the defendant in collecting them had been acting merely as the agent of the plaintiff, the objection would be more plausible and perhaps sound. But we have already seen that that is not the true relation of the parties. The society was in no sense the agent of the plaintiff or acting in his behalf, but acting for itself in performing its own part of the contract. When a party sues to recover the stipulated price for services actually rendered under a special contract fully performed on his part, it is no objection to the action on book that the services were performed under a special contract still unrescinded. Such is this case. If the action is for damages for being prevented by the defendant from performing the services, it is otherwise.

Some other objections are urged by the defendant's counsel against a recovery on this basis, such as the uncertainty and unsatisfactory character of the evidence arising from the accidental loss and mutilation of some of the subscription papers; but they arise solely from the fault of the society in not performing their part of the contract in collecting the subscriptions, and cannot avail the defendant, especially while the defendant objects to a recovery by the plaintiff on the larger sum found by the auditor on the basis of a *quantum meruit*.

But the counsel for the plaintiff claims that the plaintiff is entitled to recover the larger sum on a *quantum meruit*, independent of the

contract in reference to the amount of compensation. But it is not every breach of a special contract by one party that entitles the other to treat the contract as rescinded, and recover compensation for what he has done under it, independent of the stipulations of the contract as to the amount. The general rule is that the contract is the guide and measure of the amount of the recovery so far as it can be followed; especially where the plaintiff, as in this case, has received the benefit of a partial performance by the defendant. The principle contended for is correct, that if by the fault or neglect of the defendant it is rendered impossible to estimate the compensation by the stipulations of the contract, the plaintiff may recover upon a *quantum meruit.* But the mere fact that such breach of the contract or the fault or neglect of the defendant, embarrasses the plaintiff to some extent in his proof, will not necessarily give the plaintiff the right to abandon the contract and recover independent of it. If the defendant's neglect had been in not using due diligence in procuring subscriptions to the extent of their negligence in this case in collecting them, the plaintiff might have resorted to a *quantum meruit,* as the inquiry how much the community, with due diligence on the part of the society, could have been induced voluntarily to subscribe might be too conjectural and uncertain a guide. But what amount might, with due diligence, have been collected on a given subscription already procured, is susceptible of more certainty, and, as already said, susceptible of being rendered by proof sufficiently certain to furnish a guide under the contract.

Judgment reversed, and judgment for the plaintiff for the sum of $229.10, and interest since the trial in the county court.